# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No.   2:18-cv-1768 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| SIXTY-ONE THOUSAND EIGHT HUNDRED FIFTY AND 00/100 DOLLARS ($61,850.00) IN UNITED STATES CURRENCY, | : : : : | **VERIFIED COMPLAINT FOR FORFEITURE IN REM** |
| | : | |
| Defendant. | : | |

Plaintiff, United States of America, by its undersigned counsel, alleges the following for its action against the defendant in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure.

## NATURE OF THE ACTION

1. This is a civil action *in rem* brought to enforce 21 U.S.C. § 881(a)(6), which provides for the forfeiture to the United States of:

> All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter.

## THE DEFENDANT IN REM

2. The defendant is Sixty-One Thousand Eight Hundred Fifty and 00/100 Dollars ($61,850.00) in United States currency. The Drug Enforcement Administration seized the defendant on or about July 10, 2018, from Destiny Riddle's checked luggage following a consensual encounter with her at the John Glenn Columbus International Airport. The defendant

has been deposited into the Seized Asset Deposit Fund, where it will remain during the pendency of this action.

## JURISDICTION AND VENUE

3. Plaintiff brings this action *in rem* in its own right to forfeit and condemn the defendant under 21 U.S.C. § 881(a)(6). This Court has subject matter jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345 and over an action for forfeiture under 28 U.S.C. § 1355(a).

4. This Court has *in rem* jurisdiction over the defendant under 28 U.S.C. § 1355(b)(1)(A) because acts and omissions giving rise to the forfeiture occurred in the Southern District of Ohio.

5. Venue is proper in this district under 28 U.S.C. § 1355(b)(1)(A) because acts and omissions giving rise to the forfeiture occurred in the Southern District of Ohio and under 28 U.S.C. § 1395 because the defendant was seized in the Southern District of Ohio.

## BASIS FOR FORFEITURE

6. The defendant is subject to forfeiture under 21 U.S.C. § 881(a)(6) because it represents property furnished or intended to be furnished by any person in exchange for a controlled substance, represents proceeds traceable to such an exchange, or was used or intended to be used to facilitate any violation of 21 U.S.C. § 841 or a conspiracy to commit such offense, in violation of 21 U.S.C. § 846.

## FACTS

7. On July 10, 2018, the Columbus, Ohio Airport Drug Enforcement Administration ("DEA") Group at John Glenn Columbus International Airport received information regarding the suspicious travel of a passenger identified as Destiny Riddle ("Riddle"). Riddle had purchased,

on the same day as her travel, a one-way ticket on American Airlines to travel from Columbus, Ohio, to Los Angeles, California. Her flight was scheduled to board at approximately 4:00 p.m.

8. Based on their training and experience, DEA officers know that narcotics or money couriers often purchase airline tickets within 72 of hours of travel to a known source area for illegal narcotics like Los Angeles, California, or to a known destination area for illegal narcotics like Columbus, Ohio.

9. At approximately 3:15 p.m. that day, DEA Task Force Officer Andrew D'Orazio ("TFO D'Orazio") observed a person he knew to be Riddle going through the airport's Transportation Security Administration screening area. While Riddle cleared the screening area, TFO D'Orazio proceeded to the assigned gate for Riddle's flight. At the same time, DEA Task Force Officer Eric Doyle ("TFO Doyle") made contact with America Airlines, verified that Riddle had checked a bag, and located the checked bag.

10. Once Riddle arrived in the area of her assigned gate, TFO D'Orazio approached her in a way as not to block her egress. TFO D'Orazio identified himself as a law enforcement officer, displayed his credentials, advised Riddle that she was not in trouble and was free to leave, and asked if she would speak to him. Riddle agreed to speak with TFO D'Orazio. Shortly thereafter, DEA Special Agent Jonathan Hanley ("SA Hanley") also arrived in the area to observe.

11. When asked about her travel, Riddle advised TFO D'Orazio that she had purchased her ticket the same day of her travel, that she was a hairdresser, and that she had flown into Columbus on Saturday, July 7, to cut a client's hair. Riddle could not provide an explanation for why she purchased her plane ticket the same day as her travel back to California. Riddle also said that her client was not a celebrity or famous person, but she did not provide contact information for any client or someone who could verify her travel to Ohio.

12. Riddle went on to tell TFO D'Orazio that her clients pay for her airfare, hotels, and expenses while she is in town. She initially advised that she went to her clients' homes to cut their hair but later said that they came to her hotel. TFO D'Orazio asked Riddle why someone would fly her from California for a haircut. Riddle replied that she was just that good.

13. While speaking with TFO D'Orazio, Riddle was carrying a large purse and a makeup bag. TFO D'Orazio asked Riddle if he could search the bags in her possession. Riddle opened the bags so that TFO D'Orazio could see inside, but she declined to turn the bags over to him.

14. TFO D'Orazio then asked Riddle if one of his partners could search her checked bag. Riddle said that she knew they could search it if they wanted but that she would rather not have the officers search her bag. TFO D'Orazio advised Riddle that unless she consented, the officers could not search her bag without a search warrant from a judge. Riddle did not offer consent.

15. TFO D'Orazio asked Riddle if something was in her bag that she was concerned the officers would find. Riddle replied that the checked bag contained dirty clothes that she did not want them to see. She then added that she had some soaps and deodorants in the bag but not much else. TFO D'Orazio asked Riddle if she meant a stick of deodorant and a small pack of soap for her personal use. Riddle said, "No" and explained that she had multi-stick deodorant packages and multiple packages of soap because she had shopped in Columbus and decided to stock up on the items.

16. Based on previous federal investigations, TFO D'Orazio knows that drug trafficking organizations, operating in the Columbus, Ohio area, use bulk packs of deodorant and soap to conceal narcotics and/or narcotics proceeds.

17. TFO D'Orazio asked whether Riddle had any hair cutting equipment in her checked bag. Riddle said, "No." When Riddle previously had permitted TFO D'Orazio to look inside the bags in her possession, he observed that Riddle did not have any equipment that a professional hairdresser would need to cut a client's hair.

18. Based on his training and experience, his conversation with Riddle, and his observations during their conversation, TFO D'Orazio advised Riddle that the DEA was seizing her checked bag to allow him to obtain a search warrant. TFO D'Orazio provided Riddle a receipt for the seized bag. Riddle refused to sign the receipt or to provide any contact information. Thereafter, TFO D'Orazio and SA Hanley ended the encounter with Riddle.

19. Prior to boarding her flight, Riddle called TFO D'Orazio and SA Hanley back to her. She asked the officers several times to release her bag. When they declined to release her bag, Riddle asked them to speak to someone at Chase Bank and asserted that a representative could explain her suspicious travel, which would allow the officers to release her bag. Riddle then handed SA Hanley her cellular telephone.

20. SA Hanley accepted Riddle's cellular telephone and asked for the identity of the person on the phone. A customer service representative with Chase Bank greeted him. SA Hanley then asked the Chase Bank representative if he had any information that law enforcement needed to know about Riddle. The representative advised that he did not. SA Hanley ended the conversation and handed the cellular telephone back to Riddle. Riddle took her cellular telephone, left the officers, and boarded her flight.

21. After TFO D'Orazio and SA Hanley finished speaking with Riddle, TFO Doyle secured Riddle's checked bag in the DEA's airport office and obtained a search warrant from Franklin County Municipal Court Judge James P. O'Grady.

22. Upon obtaining the search warrant, TFO Doyle, TFO D'Orazio, and SA Hanley began to search Riddle's checked bag. Inside the bag, officers found some clothing, four (4) twin- packs of deodorant, and two (2) six-packs of soap. All of the deodorant and soap appeared to be in its original packaging.

23. TFO D'Orazio took one (1) of the containers of deodorant from its packaging, removed the cap, and turned the bottom to move the deodorant up in the container. The deodorant did not move. He then removed the small amount of deodorant at the top of the container and discovered a large bundle of United States currency hidden in the hollow cavity of the deodorant container. Upon checking the remaining seven (7) deodorant containers, he found that each of them concealed currency inside its hollow cavity.

24. TFO D'Orazio then removed the plastic packaging from one (1) of the six-packs of soap. Upon opening each of the six-packs, he discovered that one (1) of the boxes contained soap, but the other five (5) boxes each contained a bundle of United States currency. TFO D'Orazio then opened the other six-pack of soap and found the same set-up, that is, one (1) box contained soap and the other five (5) boxes contained bundles of United States currency.

25. The officers completed their search of Riddle's checked bag, placed a receipt for the seized currency in the bag, and took it to American Airlines for return to Riddle.

26. Following the discovery of the hidden currency, the officers requested assistance from the Columbus Regional Airport Authority Police K-9 Officer Dale Beam ("Officer Beam") and K-9 "TRex" to conduct a narcotic detection K-9 sniff on a package containing the seized currency. The money seized from Riddle's bag was placed in a new United States Postal Service Priority Mail package ("USPS package") and sealed. The requested narcotic detection K-9 sniff consisted of two separate K-9 sniffs as follows.

      a.      Ten USPS packages were placed in a circle in the DEA office. Five of the packages were empty, and five contained shredded, circulated currency. Officer Beam and K-9 TRex entered the office and conducted a sniff of the ten packages. K-9 TRex did not show a change in behavior to any of the ten packages. Officer Beam and K-9 TRex then left the area.

      b.      TFO Doyle replaced one of the packages with the USPS package that contained the money from Riddle's bag. The location of the money was unknown to Officer Beam. Officer Beam and K-9 TRex returned to the room and conducted a sniff of the packages. K-9 TRex showed a positive alert for the odor of narcotics on one of the packages by stopping at the package, squaring off, and then scratching at the top of the package. TFO Doyle advised Officer Beam that it was the package containing the money seized from Riddle's bag.

27.    After an official count, it was determined that the United States currency hidden in Riddle's bag totaled $61,850.00 (the defendant) and consisted of 421 – $100.00 bills, 99 – $50.00 bills, and 740 – $20.00 bills.

28.    On September 27, 2018, the DEA received a claim from Riddle asserting an interest in the defendant. In her claim, Riddle asserted that she had multiple income sources, but her business had "slowed down tremendously," causing her to live off her savings, which had been seized. Riddle did not provide any documentation in support of her claim and explained that she did not have access to her documentation at that time. Riddle also indicated that she was unable to provide her tax returns because she had her taxes prepared every three years and could not afford to do so before the filing deadline, as she is "currently homeless and experiencing financial hardship."

29. On or about November 30, 2018, TFO Doyle received information about the suspicious travel of another passenger flying from John Glenn Columbus International Airport to Los Angeles, California. Upon execution of a search warrant on the luggage seized from that passenger, TFO Doyle found a twin-pack of deodorant sticks. Just like the Riddle seizure, these deodorant containers artfully concealed United States currency, and a trained narcotic detection K-9 gave a positive alert for the odor of narcotics on the currency.

30. Based on the forgoing facts, the United States asserts that the defendant, $61.850.00 in United States currency, represents property furnished or intended to be furnished by any person in exchange for a controlled substance, represents proceeds traceable to such an exchange, or was used or intended to be used to facilitate any violation of 21 U.S.C. § 841 or a conspiracy to commit such offense, in violation of 21 U.S.C. § 846. Therefore, the property is subject to forfeiture to the United States under 21 U.S.C. § 881(a)(6).

## CLAIM FOR RELIEF

WHEREFORE, the plaintiff respectfully requests that:

(a) pursuant to Rule G(3)(b)(i), Supplemental Rules, the Clerk issue a warrant of arrest *in rem*, directing the United States to arrest and seize the defendant and to retain the same in its custody subject to further order of the Court;

(b) the Court, pursuant to Rule G(4), Supplemental Rules, direct the United States to give notice to all persons and entities having an interest in the defendant to assert, in conformity with the law, a statement of any interest they may have, including notice by publication on the official government website, www.forfeiture.gov, for 30 consecutive days;

(c) the forfeiture of the defendant to the United States be confirmed, enforced, and ordered by the Court;

(d) the Court thereafter order the United States to dispose of the defendant as provided by law; and

(e) the Court award the United States all other relief to which it is entitled, including the costs of this action.

> Respectfully submitted,
>
> BENJAMIN C. GLASSMAN
> United States Attorney
>
> s/Deborah D. Grimes
> DEBORAH D. GRIMES (0078698)
> Assistant United States Attorney
> Attorney for Plaintiff
> 221 East Fourth Street, Suite 400
> Cincinnati, Ohio 45202
> (513) 684-3711 / Fax (513) 684-6385
> Deborah.Grimes@usdoj.gov

## **VERIFICATION**

    I, Eric M. Doyle, hereby verify and declare under the penalty of perjury that I am a Task Force Officer with the Drug Enforcement Administration, that I have read the foregoing Verified Complaint for Forfeiture *In Rem* and know the contents thereof, and that the matters contained in the complaint are true to my own knowledge, except those matters stated to be alleged on information and belief and as to those matters, I believe them to be true.

    The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, and my investigation of this case.

    I hereby verify and declare under the penalty of perjury that the foregoing is true and correct.

12-21-2018
Date

ERIC M. DOYLE, Task Force Officer
Drug Enforcement Administration

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
United States of America

**(b)** County of Residence of First Listed Plaintiff: Franklin
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Deborah D. Grimes, Assistant United States Attorney
221 E. Fourth Street, Suite 400
Cincinnati, Ohio 45202   (513) 684-3711

## DEFENDANTS
Sixty-One Thousand Eight Hundred Fifty and 00/100 Dollars ($61,850.00) in United States Currency

County of Residence of First Listed Defendant: Franklin
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*
[X] 1 U.S. Government Plaintiff
[ ] 2 U.S. Government Defendant
[ ] 3 Federal Question (U.S. Government Not a Party)
[ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | PERSONAL INJURY | PERSONAL INJURY | [X] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | PROPERTY RIGHTS | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | PERSONAL PROPERTY | LABOR | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | SOCIAL SECURITY | [ ] 480 Consumer Credit |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 371 Truth in Lending | [ ] 720 Labor/Management Relations | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | [ ] 380 Other Personal Property Damage | [ ] 740 Railway Labor Act | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | | [ ] 385 Property Damage Product Liability | [ ] 751 Family and Medical Leave Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| | | | | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| | | | | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| | | | | | [ ] 895 Freedom of Information Act |
| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS | [ ] 790 Other Labor Litigation | FEDERAL TAX SUITS | [ ] 896 Arbitration |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | Habeas Corpus: | [ ] 791 Employee Retirement Income Security Act | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | | |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | | |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | IMMIGRATION | | |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | Other: [ ] 540 Mandamus & Other | [ ] 462 Naturalization Application | | |
| | [ ] 448 Education | [ ] 550 Civil Rights | [ ] 465 Other Immigration Actions | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*
[X] 1 Original Proceeding
[ ] 2 Removed from State Court
[ ] 3 Remanded from Appellate Court
[ ] 4 Reinstated or Reopened
[ ] 5 Transferred from Another District *(specify)*
[ ] 6 Multidistrict Litigation - Transfer
[ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
Forfeiture pursuant to 21 U.S.C. § 881(a)(6)
Brief description of cause:
Forfeiture

## VII. REQUESTED IN COMPLAINT:
[ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: [ ] Yes [X] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE: 12/21/18
SIGNATURE OF ATTORNEY OF RECORD: *[signature]*

**FOR OFFICE USE ONLY**
RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____